# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **KENNETH BELL, et al.,** | § | |
| *Plaintiffs* | § | |
| | § | |
| | § | |
| **v.** | § | **Case No. 1:22-CV-246-RP** |
| | § | |
| **CAL-MAINE FOODS, INC., et al.,** | § | |
| *Defendants* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

### TO: THE HONORABLE ROBERT PITMAN
### UNITED STATES DISTRICT JUDGE

Before the Court are Defendant Lucerne Foods, Inc.'s Motion to Dismiss Plaintiffs' Class Action Complaint, filed June 28, 2022 (Dkt. 10); Defendants Cal-Maine Foods, Inc., Trillium Farm Holdings, LLC and Centrum Valley Farms, LLP's Motion to Dismiss Plaintiffs' Class Action Complaint, filed August 23, 2022 (Dkt. 27); and the parties' response and reply briefs. By Text Orders entered October 17, 2022, the District Court referred the motions to the undersigned Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

## I.    Background

On March 15, 2022, Plaintiffs Kenneth Bell, Sherry Dabbs-Laury, Charlene Dirks, Wendy Brown, and Tonnie Walker-Beck filed this class action lawsuit against Defendants Cal-Maine Foods, Inc.; Trillium Farm Holdings, LLC; Centrum Valley Farms, L.P.; and Lucerne Foods, Inc. Plaintiffs allege violations of Section 17.46(b)(27) of the Texas Deceptive Trade Practices Act

1

("TDTPA"), which prohibits "false, misleading, or deceptive acts or practices" in the conduct of

any trade or commerce, including:

> taking advantage of a disaster declared by the governor under Chapter 418, Government Code, or by the president of the United States by:
>
>> (A) selling or leasing fuel, food, medicine, lodging, building materials, construction tools, or another necessity at an exorbitant or excessive price; or
>>
>> (B) demanding an exorbitant or excessive price in connection with the sale or lease of fuel, food, medicine, lodging, building materials, construction tools, or another necessity.

TEX. BUS. & COM. CODE ANN. § 17.46(b)(27) (West 2019).

In response to the COVID-19 pandemic, Texas Governor Greg Abbott declared a state of emergency on March 13, 2020, and extended it for an additional 30 days on April 12, May 12, June 11, and July 10, 2020. Complaint (Dkt. 1) ¶ 23. Plaintiffs are Texas consumers who purchased eggs from various Texas retailers during the state of emergency. Plaintiffs allege that the eggs were produced or distributed by Defendants, "some of the largest egg producers in Texas and the United States." *Id.* ¶ 2. Plaintiffs allege that "[b]etween the onset of the COVID-19 pandemic and March 30, 2020, the price of eggs nearly tripled in Texas," from $1 to almost $3 per dozen. *Id.* ¶¶ 8, 26. Plaintiffs further allege that Defendants unjustifiably raised the price of eggs to an "exorbitant or excessive price" during the declared state of emergency and by participating in a price spike in the Urner-Barry Index,[1] in violation of Section 17.46(b)(27) of the TDTPA. *Id.* ¶ 80.

Plaintiffs seek to permanently enjoin Defendants from selling eggs at prices prohibited by the TDTPA, as well as a declaration that Defendants violated the TDTPA, monetary damages, attorneys' fees, and an order certifying a class of "[a]ll consumers who purchased eggs in the state of Texas that were sold, distributed, produced, or handled by any of the defendants, at any of the

---

[1] Plaintiffs allege that Urner Barry Publications, Inc. is a business publisher that specializes in market reports on the food industry. Dkt. 1 ¶ 58.

retail chains where Plaintiffs purchased their eggs, during the state of emergency declared by Governor Greg Abbott on March 13, 2020." *Id.* ¶ 71. Plaintiffs invoke the Court's diversity jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), which requires that the aggregate amount in controversy exceed $5 million and that minimal diversity exits between the parties (i.e., at least one plaintiff and one defendant are from different states).

## A.  Plaintiffs' Previous Lawsuit

On April 30, 2020, Plaintiffs filed a virtually identical class action against Defendants Cal-Maine Foods, Trillium Farm Holdings, Centrum Valley Farms, and several retailers who sold eggs in Texas during the state of emergency, but not Lucerne Foods. *Bell v. Cal-Maine Foods, Inc.*, No. 1-20-CV-00461-RP (W.D. Tex. April 30, 2020) ("*Bell I*"). After Plaintiffs voluntarily dismissed the retailer defendants under Rule 41, the remaining defendants moved to dismiss under Rules 12(b)(1) and 12(b)(6). *Id.* at Dkt. 139. The defendants argued that the Court lacked subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because Plaintiffs failed to allege facts showing that the damages against any single defendant would exceed $5 million, or that the damages should be aggregated against all defendants based on a theory of joint liability.

The Court found that Plaintiffs failed to show that the defendants acted together to increase the price of eggs in order to show joint liability. *Bell v. Cal Maine Foods, Inc.,* No. A-20-CV-461-RP, 2021 WL 8053492, at *3 (W.D. Tex. July 14, 2021), *R. & R. adopted*, 2021 WL 8018066 (W.D. Tex. Sept. 20, 2021). The District Court dismissed *Bell I* without prejudice for lack of subject matter jurisdiction and entered a Final Judgment on September 20, 2021. Dkt. 170. On October 18, 2021, Plaintiffs moved to amend the judgment under Federal Rule of Civil Procedure 59, asking the Court to modify the Final Judgment to allow them to file a second amended complaint. Dkt. 171. The Court denied Plaintiffs' motion via Text Order on July 12, 2022.

**B. Motions to Dismiss**

Plaintiffs filed this lawsuit on March 15, 2022, while their motion to amend the judgment in *Bell I* was pending. All Defendants now move to dismiss the case under Rules 12(b)(1) and 12(b)(6). Defendant Lucerne Foods argues that Plaintiffs fail to (1) allege facts to demonstrate that this Court has subject matter jurisdiction under § 1332(d)(2)(A), and (2) state a plausible claim for relief under the TDTPA. Defendants Cal-Maine Foods, Trillium Farm Holdings, and Centrum Valley Farms also argue that Plaintiffs fail to (1) allege facts to demonstrate that this Court has subject matter jurisdiction under § 1332(d)(2)(A), and (2) state a plausible claim for relief. The latter three defendants also contend that this suit is duplicative of *Bell I* and barred under the rule against claim-splitting, and that Section 17.46(b)(27) of the TDTPA is unconstitutional.

The Court addresses Defendants' jurisdictional arguments first. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice.").

## II.    Legal Standards

Federal courts are courts of limited jurisdiction, possessing "only that power authorized by the Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Article III, § 2, of the Constitution delineates the character of the controversies over which federal judicial authority may extend. And lower federal-court jurisdiction is further limited to those subjects encompassed within a statutory grant of jurisdiction." *Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019) (cleaned up). Accordingly, district courts may not exercise jurisdiction absent a statutory basis. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).

Motions filed under Rule 12(b)(1) allow a party to challenge the subject matter jurisdiction of the district court to hear a case. "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming*, 281 F.3d at 161. The party seeking to invoke subject-matter jurisdiction has the burden to establish it. *Ghedi v. Mayorkas*, 16 F.4th 456, 463 (5th Cir. 2021). At the pleading stage, the burden is to allege "a plausible set of facts establishing jurisdiction." *Di Angelo Publ'ns, Inc. v. Kelley*, 9 F.4th 256, 260 (5th Cir. 2021). On a motion to dismiss for lack of jurisdiction, all well-pleaded facts are taken as true and all reasonable inferences must be made in the plaintiff's favor. *Haverkamp v. Linthicum*, 6 F.4th 662, 668 (5th Cir. 2021).

### III.    Jurisdictional Analysis

Plaintiff invokes the Court's jurisdiction under CAFA, 28 U.S.C. § 1332(d), which extends federal jurisdiction "to certain large class action lawsuits." *Arbuckle Mountain Ranch of Tex., Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 337 (5th Cir. 2016). "CAFA seeks to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state." *Madison v. ADT, L.L.C.*, 11 F.4th 325, 327 (5th Cir. 2021) (internal citation and quotations omitted). CAFA grants the federal courts original jurisdiction to hear interstate class actions in which: (1) the proposed class contains more than 100 members; (2) minimal diversity exits between the parties (i.e., at least one plaintiff and one defendant are from different states); (3) the aggregate[2] amount in controversy exceeds $5 million; and (4) the primary defendants are not states, state officials, or other governmental entities. 28 U.S.C. § 1332(d)(2).

---

[2] Under § 1332(d)(6), "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."

Here, the parties dispute whether the amount in controversy exceeds $5 million. As discussed above, in *Bell I*, the District Court adopted the Magistrate Court's finding that Plaintiffs failed to allege sufficient facts to show that the amount in controversy exceeded $5 million. In his Report and Recommendation, United States Magistrate Judge Mark Lane stated that "Section 1332(d)(6) expressly allows aggregating class members' claims to determine whether the amount in controversy is met, but the statute is silent as to when it is appropriate to aggregate class members' claims against different defendants to determine the amount in controversy." *Bell*, 2021 WL 8053492, at *2. Therefore, the Magistrate Court applied the "general rule" with respect to the aggregation of claims against two or more defendants, which provides that: "Claims against two or more defendants can be aggregated for the purpose of attaining the jurisdictional amount, as a general proposition, if they are jointly liable to the plaintiff." *Id.* (quoting *Jewell v. Grain Dealers Mut. Ins. Co.*, 290 F.2d 11, 13 (5th Cir. 1961)); *see also Hollinger v. Home State Cnty. Mut. Ins. Co.*, No. 5:09-CV-118, 2010 WL 11530632, at *9 (E.D. Tex. Aug. 5, 2010) (finding that plaintiff's claims against multiple defendants could only be aggregated to meet jurisdictional requirement under CAFA if defendants were jointly liable to the plaintiff), *aff'd*, 654 F.3d 564 (5th Cir. 2011). The Magistrate Court further stated: "A petition alleging that multiple parties acted together to violate the law has sufficiently pleaded a theory of joint liability." *Bell*, 2021 WL 8053492, at *2.

The Magistrate Court looked to Plaintiffs' Complaint to determine whether Plaintiffs alleged sufficient facts to show joint liability. In their Complaint in *Bell I*, Plaintiffs alleged that "the vast majority of [eggs sold in Texas] are sold by the defendants named in this lawsuit, who represent a large percentage of the Texas grocery market, as well as the thirteen largest wholesalers of eggs in Texas"; "this case is predominated by questions of law and fact common to all class members, including whether the defendants charged an excessive or exorbitant price for eggs during the

COVID-19 emergency"; and: "All of the producer defendants participated in manipulating the Urner-Barry index to raise the price of eggs." *Id.* at \*3. The Magistrate Court found these factual allegations insufficient to show that the requisite amount in controversy was met:

> Although each Defendant is accused of the same vague behavior—manipulating the Urner-Barry index to increase egg prices—there are no factual allegations that Defendants are related entities or that Defendants worked together or otherwise coordinated (or even knew of the others' activities) to manipulate the index pricing. Plaintiffs pleaded no facts that would show any Defendant should be liable for the acts of any other Defendant. . . . Nor have Plaintiffs pointed the court to any case that supports joint liability where defendants acted separately, but similarly, to cause harm.
>
> Without joint liability, there is no legal basis to aggregate Plaintiffs' damages claims against the Defendants. Without such aggregation, Plaintiffs have not plausibly alleged damages that exceed \$5 million against each Defendant. Accordingly, Plaintiffs have not shown the court has subject matter jurisdiction over their claims.

*Id.*

Plaintiffs acknowledge that they must show Defendants are jointly liable in order to aggregate damages. Dkt. 14 at 3 ("As the Magistrate's opinion noted, aggregation is possible 'if the defendants are jointly liable to the plaintiff.'"). Plaintiffs also acknowledge that the Court's ruling "means that Plaintiffs cannot argue that the amount of egg sales can be aggregated among Defendants solely because they participated in the Urner-Barry Index." *Id.* Plaintiffs argue, however, that they have added many facts to their Complaint in this action to show that Defendants "are jointly and severally liable and the total of their sales may be aggregated." *Id.* at 4. Plaintiffs contend that the following new allegations in their Complaint show Defendants are jointly liable:

> 65. Because discovery has not yet commenced in this case, the precise number of eggs sold in Texas by the Defendants, and the precise amount of money they gained from these sales, including the portion that was excessive and illegal, cannot be known to Plaintiffs. However, an examination of the market as a whole and these Defendants' role within in it makes it clear that amount

7

in controversy easily clears the five-million dollar threshold for CAFA jurisdiction.

66. Texas is the nation's second most populous state, having more than twenty-nine million residents in 2020, according to the U.S. Census Bureau. For the United States as a whole, each person ate 286 eggs during the year 2020. In other words, the twenty-nine million people in Texas ate a total of more than 8.29 billion eggs. Divided into dozens, this means more than 691 million dozen eggs were sold in the state.

67. Eggs are a staple product that most people buy on a consistent, regular basis. Therefore, the roughly 691 million dozen eggs sold in Texas during 2020 break down into about two dozen eggs per Texan per month. This means that during each month of 2020, an average of more than 57 million dozen eggs were sold.

68. The Plaintiffs include purchasers from H-E-B, Kroger, Brookshires, Wal-Mart, and Randall's (owned by Albertson's), as well as Lowe's Foods, a smaller chain of grocery stores. In a list available online, Walmart has 293 stores in Texas, H-E-B has 276, Kroger has 2016, Albertsons has 149, and Brookshire's has 78. No other store chain has more than 54. The stores that sold eggs to Plaintiffs have a total of at least 1,158 locations in Texas; all other supermarkets number fewer than 500 stores combined. Thus, it is likely a conservative estimate to say that the stores that sold eggs to Plaintiffs and the class or classes they seek to represent sold at least two-thirds of the eggs sold in Texas in the months following the declaration of emergency by Governor Abbott.

69. The prices plaintiffs paid, alleged above in Paragraphs 28, 33, 38, 43, 49, and 54, were more than a dollar higher than pre-pandemic levels in every case, and rose by more than two dollars in some. The chart cited in Paragraph 60 shows that the average price of eggs rose by nearly two dollars, and was more than a dollar higher than pre-pandemic levels for more than a month. As noted in Paragraph 67, Texans likely purchased more than 50 million dozen eggs during that month, and by any reasonable estimate purchased approximately two-thirds of them from the stores where Plaintiffs purchased.

70. An average price rise of one-dollar per dozen, which was less than reported by any plaintiff or the Urner-Barry index, combined with purchase of approximately 56 million dozen eggs by Texans, two thirds of which were purchased in the relevant stores, would mean roughly 37.5 million dollars in controversy, more than seven times the threshold of jurisdiction under CAFA.

Dkt. 1 ¶¶ 65-70.

8

These allegations do not show that the Defendants are related entities, worked together, or conspired to increase the price of eggs during the state of emergency. Plaintiffs plead no facts showing that any Defendant should be liable for the acts of any other Defendant. Nor have Plaintiffs cited any case supporting joint liability where defendants acted separately, but similarly, to cause harm. As Magistrate Judge Lane stated in *Bell I*:

> Without joint liability, there is no legal basis to aggregate Plaintiffs' damages claims against the Defendants. Without such aggregation, Plaintiffs have not plausibly alleged damages that exceed $5 million against each Defendant. Accordingly, Plaintiffs have not shown the court has subject matter jurisdiction over their claims.

2021 WL 8053492, at *3.

For these reasons, the Court lacks subject matter jurisdiction, and Defendants' Motions to Dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction should be granted. The Court is precluded from addressing the merits of this case and need not address Defendants' alternative Rule 12(b)(1) arguments.

## IV.     Recommendation

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Defendants' Motions to Dismiss Plaintiffs' Class Action Complaint (Dkt. 10 and Dkt. 27) and **DISMISS WITHOUT PREJUDICE** Plaintiffs' Class Action Complaint for lack of subject matter jurisdiction.

It is **FURTHER ORDERED** that the Clerk remove this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Robert Pitman.

## V.     Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v.*

*United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on December 7, 2022.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE